# DIRECTORS AND OFFICERS LIABILITY POLICY DECLARATIONS



Corporate Office
945 E Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | HP638046 00 | |

●THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:   RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.** INSURED'S NAME AND MAILING ADDRESS                    PRODUCER'S NAME AND ADDRESS

CHARTER SCHOOLS USA, INC.

6245 NORTH FEDERAL HIGHWAY

FORT LAUDERDALE, FL 33308

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## ITEM 2. POLICY PERIOD:

FROM ___7/1/2010___ TO ___7/1/2011___  12:01 AM Standard Time at the Insured's address as stated herein

## ITEM 3. LIMIT OF LIABILITY:

$ ___5,000,000___  Aggregate Limit of Liability each policy period

## ITEM 4. RETENTION:

$ __0.00__  Insuring Agreement A

$ __25,000.00__  Insuring Agreement B

$ __25,000.00__  Insuring Agreement C

$ __25,000.00__  Employment Practices Claim

## ITEM 5. PREMIUM:

$ ___73,850.00___

+ FL Hurricane Cat Fund Assessment $738.50

## ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:

SEE RSG 200007 0204 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 241001 0609  - DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY - 2009

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____  ___November 22, 2010___  _Guy Buonanno_
                                              DATE                    AUTHORIZED REPRESENTATIVE

RSG 200006 0204



EXHIBIT "A"

A member of Alleghany Insurance Holdings LLC

## DIRECTORS AND OFFICERS LIABILITY POLICY
## SUPPLEMENTAL DECLARATIONS



POLICY NUMBER:    NHP638046

SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
|---|---|
| Amended Definition of Claim | |
| Amended Definition of Loss - Fiduciary Liability | |
| Amended Definition of Plan - Fiduciary Coverage | |
| Amended Settlement Provision | RSG 204160 1108 |
| Bi-Lateral Discovery Period | |
| Contractual Exclusion Carve Back | |
| Coverage Extension - Fiduciary Liability - Separate Limit | RSG 244006 0109 |
| Exclusion - Pollution Liability - Securities Claim Carve Back | |
| Exclusion - Prior and or Pending Litigation Backdated | RSG 206071 0204 |
| Exclusion - Remove Anti-Trust | RSG 246003 0606 |
| Exclusion - Sexual Abuse with EPL Carve back | RSG 206086 1205 |
| Florida - Amended Definition of Loss - Defense Claims for ADA | RSG 202113 0509 |
| Florida - Changes - Punitive Damages | RSG 202061 1209 |
| Florida - Coverage Extension - Educational Institution | RSG 242010 0509 |
| Florida - Full Severability | RSG 202057 0804 |
| Florida Changes - Marital Estate | RSG 202152 0310 |
| Florida Changes - Nonrenewal | RSG 203009 0204 |
| Fully Non-Rescindable Coverage | RSG 204157 0808 |
| Insuring Agreement A - Separate Limit | RSG 204143 0407 |
| Modified Insured Vs. Insured Exclusion | |
| Modified Notice of Claim or Circumstance-Specific Position Trigger | RSG 204147 0607 |
| Sublimit - Defense Expenses - Wage and Hour Claims | RSG 204153 0609 |
| Third Party Liability Coverage | RSG 204119 0204 |

RSG 200007 0204

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED DEFINITION OF CLAIM

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

**SECTION III. – DEFINITIONS B. Claim** is deleted and replaced by the following:

**B.   Claim**, either in the singular or the plural, means:

1. A written demand for monetary or non-monetary relief;

2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

   a.   Receipt or service of a complaint or similar pleading;

   b.   Return of an indictment (in the case of a criminal proceeding);

   c.   Receipt of a notice of charges; or

3. A civil, criminal, administrative or regulatory investigation of an **Insured Person** by the Securities Exchange Commission ("SEC") or similar state or foreign government authority, after the **Insured Person** is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Insured Person**;

4. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**;

5. A civil, criminal, administrative or regulatory investigation of an **Insured Person** where an **Insured Person** is identified in writing by such investigating authority as a person against whom a civil, criminal, administrative, regulatory or arbitration proceeding may be commenced; or after the service of a subpoena upon such **Insured Person**.

The DEFINITION of **Claim** shall include an **Employment Practices Claim**; provided the DEFINITION of **Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046        **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED DEFINITION OF LOSS - FIDUCIARY LIABILITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The DEFINITION of **Loss**, item B. 8. contained in the Coverage Extension – Fiduciary Liability shall be amended to include:

A monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** and/or loss in the actual accounts of participants in a **Plan** by reason of a change in value of the investments held by that **Plan,** including, but not limited to, the securities of the **Sponsor Organization**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits".

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## AMENDED DEFINITION OF PLAN - FIDUCIARY COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

A.  The Definition of **Plan,** item 10. contained in the Coverage Extension-Fiduciary Liability Separate limit shall be amended to include:

   e.  any group or group-type insurance program, including a Health Savings Account (HSA) program, that was, is now, or becomes sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization** and meets the safe harbor conditions set forth in 29 C.F.R. 2510.3-1(j)(1);

   f.  any benefit plan that is not subject to Title I of ERISA, including any fringe benefit or excess benefit plan, that was, is now, or becomes sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization.**

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED SETTLEMENT PROVISION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, A. Duty to Defend is deleted and replaced by the following:

A.  **Duty to Defend**

It shall be the right and the duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to investigate and conduct negotiations and, with the consent of the **Insured**, to enter into a settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

1.  The amount for which the **Insurer** could have settled such **Claim** plus **Defense Expenses** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"); plus

2.  Eighty percent (80%) of covered **Loss** in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability.

In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 3. of the Declarations Page.


All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# BI-LATERAL DISCOVERY PERIOD

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. - CONDITIONS, H. Discovery Period is deleted and replaced with the following:

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of the below percent of the Full Annual Premium, to a period of the number of days noted below following the effective date of such cancellation or non-renewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during the elected period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**.

| Discovery Period | Additional Premium |
|---|---|
| 365 Days (2 years) | <u>75</u>% of Full Annual Premium |
| 730 Days (3 years) | <u>150</u>% of Full Annual Premium |

The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within <u>thirty (30)</u> days of the effective date of cancellation or non-renewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.  The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046        **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CONTRACTUAL EXCLUSION CARVE BACK

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

SECTION IV. – EXCLUSION 13.**c.**, is deleted and replaced with the following:

13.  With respect to INSURING AGREEMENT C. of this policy, only:

    **c.**  Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement, provide this EXCLUSION shall not apply to:

        1.  **Defense Expenses** in connection with an **Employment Practices Claim**; or

        2.  Any **Claim** alleging a **Wrongful Act** of an **Insured** occurring during the tenure and/or peer review process;

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COVERAGE EXTENSION – FIDUCIARY LIABILITY
## SEPARATE LIMIT

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

**A.  INSURING AGREEMENT**

SECTION I. - INSURING AGREEMENTS shall be amended to include the following:

The **Insurer** shall pay **Loss** on behalf of the **Insured** resulting from a **Fiduciary Claim** first made against the **Insureds** during the **Policy Period** for a **Fiduciary Wrongful Act.**

The maximum aggregate Limit of Liability available for coverage granted under this endorsement shall be $1,000,000.  This limit shall be in addition to the Limit of Liability set forth in Item 3. of the Declarations Page.

A Retention in the amount of $10,000 shall apply to any **Loss** arising from a **Fiduciary Claim**.  The Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** arising from a **Fiduciary Claim** that is in excess of the above stated Retention amount.

**B.  DEFINITIONS**

Solely for the purpose of this endorsement, the following DEFINITIONS are added:

1.  **Administration** means:

    a.  handling records in connection with **Employee Benefits**;

    b.  effecting enrollment, termination or cancellation of employees under an **Employee Benefits** program;

    c.  giving counsel to employees with respect to **Employee Benefits**; or

    d.  interpreting **Employee Benefits**.

2.  **Fiduciary Claim** means a:

    a.  written demand for money or other civil relief commenced by the receipt of such demand;

    b.  civil proceeding, including any arbitration or other alternative dispute resolution proceeding commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

    c.  criminal proceeding commenced by the return of an indictment;

    d   written notice of the commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation; or

    e.  formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar documents;

    against an **Insured** for a **Fiduciary Wrongful Act.**

    A **Fiduciary Claim** shall not be an **Employment Practices Claim**.

3.  **Fiduciary Wrongful Act** means any actual or alleged:

    a.  breach of the duties, responsibilities or obligations imposed upon fiduciaries of any **Plan** by ERISA or the common law or statutory law of any jurisdiction governing such **Plan**;

    b.  any other matter claimed against an **Insured** solely by reason of their service as a fiduciary of any **Plan**; or

    c.  any negligent act, error or omission by an **Insured** in the **Administration** of **Employee Benefits** or any other matter claimed against an **Insured** solely by reason of their service as a fiduciary of any **Plan**.

4.  **Employee** means any natural persons whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

5.  **Employee Benefits** means any **Plan**, and any workers' compensation insurance, unemployment insurance, Social Security or disability benefits for employees of the **Insured Organization**.

6.  **Insured** means the **Insured Persons**, the **Plan** and the **Sponsor Organization**.

7.  **Insured Person** means any director, officer, trustee, partner or employee of the **Plan** or of the **Sponsor Organization** while acting in his or her capacity as a fiduciary of the **Plan**.

8.  **Loss** as defined in SECTION III. - DEFINITIONS of this policy, will not include:

    a.  fines, penalties or taxes imposed by law, except that **Loss** may include civil penalties of up to five percent (5%) imposed pursuant to Section 502(i) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") for inadvertent violation of Section 406 of ERISA, and civil penalties of up to twenty percent (20%) of any settlement or judgment imposed pursuant to Section 502(I) of ERISA for breach of fiduciary duty; or

    b.  benefits due or to become due under the terms of any **Plan**, unless and then only to the extent that recovery for such benefits is based on a **Fiduciary Wrongful Act** and is payable as the personal obligation of an **Insured** who is a natural person; provided that **Loss** shall include **Defense Expenses** with respect to any **Claim** seeking benefits due or to become due under the terms of any **Plan**.

9.  **Pension Benefit Plan** means any employee pension benefit plan, as such term is defined in ERISA.

10. **Plan** means any:

    a.  **Pension Benefit Plan** and any trust established to hold the assets of any such **Pension Benefit Plan**;

    b.  **Welfare Benefit Plan** which was, is now, or becomes sponsored solely by any **Sponsor Organization**;

    c.  **Pension Benefit Plan**, or any trust established to hold the assets of any such **Pension Benefit Plan**, created during the **Policy Period** by any **Sponsor Organization** or by any interest owned or controlled by such **Sponsor Organization** for the employees thereof, but only if the Insured provides the Insurer with written notice of the creation of such **Pension Benefit Plan** within ninety (90) days of the effective date of such **Pension Benefit Plan**; and

    d.  otherwise covered **Plan** of any **Subsidiary** as defined in the policy at SECTION III. - DEFINITIONS, M., or as allowed in policy SECTION V. – CONDITIONS, I., but only if the:

        (1) **Insured** provides the **Insurer** such additional information with respect thereto as the **Insurer** may reasonably require;

        (2) **Insured** provides the **Insurer** written notice of such acquisition as soon as practicable after the effective date thereof; and

        (3) **Insurer** specifically agrees by written endorsement to provide coverage with respect to such **Plan** and the **Insured** has accepted any additional terms, conditions and limitations of coverage, and agrees to pay any additional premium that the **Insurer** in its sole discretion, shall deem appropriate.

    **Plan** shall not include any multi-employer plan.

11. **Sponsor Organization** means the **Insured Organization** while acting in its capacity as a sponsor of a **Plan** solely for the benefit of its employees.

12. **Welfare Benefit Plan** means any employee welfare benefit plan, as such term is defined in ERISA.

**C.  EXCLUSIONS**

Exclusions in the policy apply according to their terms, except as expressly modified by this or any other policy endorsement.  Specifically with respect to **Fiduciary Claims**, exclusions in this endorsement shall govern in the event of any specific conflict between them and other exclusions in the policy.

The **Insurer** shall not be liable to make any payment for **Loss**, and shall have no duty to defend or pay **Defense Expenses**, in connection with any **Fiduciary Claim** made against any **Insured**:

1.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Fiduciary Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding which was brought prior to <u>7/24/04</u>;

2.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged failure by any **Insured** to comply with any law, rule or regulation concerning workers' compensation insurance, unemployment insurance, Social Security or disability benefits, whether or not such failure to comply is willful;

3.  for the failure to collect contributions owed to any **Plan** from any employer unless such failure is due to the negligence of an **Insured,** or for the return to any employer of any contributions if such amounts are or could be chargeable to a **Plan**; provided, this EXCLUSION 3. shall not apply to the **Insurer's** obligations, subject to the applicable Limit of Liability, to defend such **Fiduciary Claim** and to pay **Defense Expenses** resulting therefrom;

4.  made by or on behalf of a fidelity insurer against a natural person whose conduct has resulted in a **Loss** which has been paid under a fidelity bond; or

5.  based upon, arising out of, directly or indirectly resulting from any discrimination, retaliation or wrongful termination of employment; provided, this EXCLUSION 5. will not apply to **Fiduciary Claims** asserted under Section 510 of ERISA.

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

For purposes of this endorsement only, reference to the Employee Retirement Income Security Act of 1974 and/or the Consolidated Omnibus Budget Reconciliation Act in SECTION IV. – EXCLUSIONS, 6., is deleted in its entirety.

## D. EMPLOYMENT PRACTICE CLAIMS

Any **Claim(s)** that trigger coverage as both a **Fiduciary Claim** and an **Employment Practices Claim** shall be covered first as an **Employment Practices Claim**, and shall be subject to the Limit of Liability, Retention and other terms, conditions and exclusions normally applicable to **Employment Practices Claims** under this Policy. If there is covered **Loss** remaining to be paid for an **Employment Practices Claim** that is also a **Fiduciary Claim** after exhaustion of applicable Retentions, coinsurance and Limits of Liability otherwise applicable to **Employment Practices Claims**, coverage shall apply to such **Loss** as stated in this endorsement, provided that the Retention applicable under this endorsement shall be reduced by the amount of Retention already paid by the **Insured** in connection with the **Employment Practices Claim**.

## E. RECOURSE

It is agreed that, in the event an **Insured** breaches a fiduciary obligation under ERISA, the **Insurer** has the right of recourse against any such **Insured** for any amount paid by the **Insurer** as a result of such breach of fiduciary duty, but the **Insurer** shall have no such right of recourse if the policy has been purchased by the fiduciary or by an employer or an employee organization.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – POLLUTION LIABILITY – SECURITIES CLAIM CARVE BACK

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

**SECTION IV. – EXCLUSIONS 8.** is deleted and replaced by the following:

8.  For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**; provided, however, this exclusion shall not apply to any **Claim** brought by a securities holder of the **Insured Organization** alleging loss of shareholder value as a result of management's failure to disclose or implement controls of pollutants.

Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRIOR AND/OR PENDING LITIGATION BACKDATED

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION IV. - EXCLUSIONS, 10. is deleted and replaced with the following:

10. Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any **Insured** that was commenced or initiated prior to, or pending as of 4/23/03, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046    **Effective:** 7/1/2010

RSG 206071 0204

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION-REMOVE ANTI-TRUST

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION IV. – EXCLUSIONS, 13. b. is deleted in its entirety.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046     **Effective:** 7/1/2010

RSG 246003 0606

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – SEXUAL ABUSE WITH EPL CARVE BACK

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, any sexual abuse or sexual assault, molestation, child abuse or neglect; provided that this exclusion shall not apply to any **Claim** alleging an **Employment Practices Wrongful Act**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

RSG 206086 1205

RSUI INDEMNITY COMPANYRSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA - AMENDED DEFINITION OF LOSS – DEFENSE FOR ADA CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION III. – DEFINITIONS, K. is deleted and replaced by the following:

**K. Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**.  **Loss** (other than **Defense Expenses**) shall not include:

1. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2. Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

3. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4. The cost of creating or reinstating employment;

5. Any amounts owed as wages to any **Employee**, other than front pay or back pay;

6. Civil or criminal fines or penalties;

7. Taxes, whether owed to or by any **Insured**;

8. Any liability, or costs incurred, due to any **Insured's** obligation to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar;

9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable.  For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.  In the state of Florida, coverage for punitive or exemplary damages shall solely apply to vicarious liability.

All other terms and conditions of this policy remain unchanged.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA - CHANGES- PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The last paragraph of SECTION III. – DEFINITIONS, K. **Loss** is amended to read as follows:

The DEFINITION of **Loss** shall include:

1) vicarious liability for punitive or exemplary damages incurred by the Insured, but only to the extent that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to Florida law, and the multiplied portion of any multiplied damage award, if and where insurable; or

2) punitive or exemplary damages, but only to the extent:

   a. such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to the **Insured**, the **Claim**, the **Insurer**, or this policy and is most favorable to the insurability of such damages; and

   b. that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046     **Effective:** 7/1/2010

RSG 202061 1209

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA – COVERAGE EXTENSION – EDUCATIONAL INSTITUTION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

A.   SECTION III. – DEFINITIONS, I. **Insured Person** shall be amended by adding the following:

**Insured Person** shall include any past, present or future member of the faculty, student teacher, teaching assistant, representative to an education association of which the **Insured Organization** is a member, and any president, chancellor, provost, treasurer, vice president, dean, personnel director, executive director, risk manager, university counsel or other comparable senior administrator of the **Insured Organization**, regardless of whether they are considered as an **Employee** of the **Insured Organization** or an independent contractor.

B.   SECTION III. – DEFINITIONS, K. **Loss** shall be amended to include the following:

Amounts an **Insured** is legally obligated to pay (including fines and penalties) as the result of a settlement of any **Regulatory Claim** made against an **Insured**.

**Regulatory Claim** is defined as:

1.   a.   **Defense Expenses** incurred in connection with a **Claim** seeking an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as amended): Section 4911 (tax on excess expenditures to influence legislation); Section 4940 (a) (tax on net investment income of tax-exempt foundations); Section 4941 (taxes on self-dealing); Section 4942 (taxes on failure to distribute income); Section 4943 (taxes on excess business holding); Section 4944 (taxes on investments which jeopardize charitable purpose); Section 4945 (taxes on taxable expenditures); Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements); Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

   b.   **Loss** shall include the ten percent (10%) **Excess Benefit** penalty assessed by the Internal Revenue Service against any individual **Insured Person** for management involvement in the award of an **Excess Benefit**.

   **Defense Expenses** incurred by any individual **Insured Person** subject to the twenty five percent (25%) **Excess Benefit** penalty assessed by the Internal Revenue Service against any such **Insured Person** as a **Disqualified Person**.

   Under no circumstances shall the **Insurer** be liable for the payment of **Loss** attributable to any two hundred percent (200%) penalty assessed by the Internal Revenue Service for failure to correct the award of an **Excess Benefit**.

   c.   **Defense Expenses** resulting from any **Claim** arising out of or in connection with an actual or alleged violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

2.   **Government Funding Defense Expense Coverage**

   **Loss** shall not include the return of funds which were received from any federal, state or local governmental agency; provided, however, that with respect to any **Claim** arising out of the return or request to return, such funds, and subject to a Retention amount of $1,000,000 the **Insurer** shall pay **Defense Expenses** up to a total of $1,000,000 incurred by the **Insured** on a 50% coinsurance basis, with 50% of such **Defense Expenses** to be borne by the **Insured** and to remain uninsured; and the remaining 50% of such **Defense Expenses** to be covered by the **Insurer** subject to all other terms, conditions and exclusions of this policy.

C.  SECTION III. – DEFINITIONS, N. **Wrongful Act** shall be amended by adding the following:

**Wrongful Act** shall include any alleged defect in the tenure process, including the denial or removal of tenure, educational malpractice or failure to educate, negligent instruction, failure to supervise, inadequate or negligent academic guidance or counseling, improper or inappropriate academic placement or discipline, failure to grant due process, invasion of privacy or humiliation, including violation of the Buckley Amendment, or the publication of defamatory material in a book, newspaper or other publication of the **Insured Organization**, or the broadcast of such material over a radio, cable, television or computer site owned or operated by the **Insured Organization**.

D.  SECTION III. – DEFINITIONS, O. **Excess Benefit** and P. **Disqualified Person** are added:

**Excess Benefit** shall be defined in the "Taxpayer Bill of Rights II", (H.R. 2337, P.L. 104-168).

**Disqualified Person** shall be defined in the "Taxpayer Bill of Rights II", (H.R. 2337, P.L. 104-168).

E.  SECTION IV. – EXCLUSIONS shall be amended by adding the following:

Alleging, arising out of, based upon, or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee; provided, this EXCLUSION shall not apply to:

1.  A failure to provide education, medical, dental or psychological services by any **Insured**;

2.  Any **Employment Practices Wrongful Act**;

3.  Any termination of hospital practice privileges; or

4.  The providing of legal services by the general counsel or other counsel employed by the **Insured Organization**.

As respects item E.1. above, no coverage shall apply to a **Claim** brought by or on behalf of an individual seeking damages for **Loss** sustained by an individual caused by a health care provider's provision of, or failure to provide, medical, dental or psychological treatment, diagnosis or consultation.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046     **Effective:** 7/1/2010

RSG 242010 0509

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA - FULL SEVERABILITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, K. Representations is deleted and replaced by the following:

K.  **Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Insurer** under this policy.  This policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy shall not afford coverage to any **Insured** who knew of such untruth.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

RSG 202057 0804

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – MARITAL ESTATE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION II. – COVERAGE EXTENSIONS, A. Marital Estate is deleted in its entirety and replaced with the following:

**A.  Marital Estate**

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized "domestic partner" of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or "domestic partner" of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or "domestic partner".

"Domestic Partner" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

RSG 202152 0310

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES - NONRENEWAL

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, G. Cancellation; Renewal Provision is amended to include the following:

**Nonrenewal**

1. If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**.  If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046     **Effective:** 7/1/2010

RSG 203009 0204

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FULLY NON-RESCINDABLE COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

Notwithstanding anything contained in this policy to the contrary, the coverage provided under SECTION I., INSURING AGREEMENT A., B. and C. shall be non-rescindable by the **Insurer**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046      **Effective:** 7/1/2010

RSG 204157 0808

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# INSURING AGREEMENT A – SEPARATE LIMIT

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

Notwithstanding anything contained in this policy to the contrary, there shall be an addition to the maximum aggregate Limit of Liability available under this policy in the amount of $500,000.  This amount shall be in addition to the Limit of Liability as set forth in Item 3. of the Declarations Page and shall be available solely for **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this policy, and shall be subject to the following additional conditions:

(1) Any **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this policy shall first be paid under the Limit of Liability as set forth in Item 3. of the Declarations Page, and such Limit of Liability must be completely exhausted by payment of **Loss** under SECTION I. INSURING AGREEMENTS A., B., and/or C. of this policy before **Loss** shall be paid under the additional Limit of Liability dedicated for **Insured Persons:** and

(2) The additional Limit of Liability dedicated for **Insured Persons** shall be excess of any insurance available that is specifically excess of this policy and such excess insurance must be completely exhausted by payment of **Loss** thereunder before the **Insurer** shall have any obligation to make any payment on account of the additional Limit of Liability dedicated for **Insured Persons**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046     **Effective:** 7/1/2010

RSG 204143 0407

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MODIFIED INSURED VS. INSURED EXCLUSION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION IV. – EXCLUSIONS, 9. is amended to read as follows:

9.    Brought by or on behalf of any **Insured**, or which is brought by any security holder of the **Insured Organization**, whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**.  Provided, however, this EXCLUSION shall not apply:

   a.   Any **Claim** brought by an **Insured Person**, where such **Claim** is in the form of a cross-claim or a third-party claim for contribution or indemnity, which is part of and results directly from a **Claim** that is not otherwise excluded by the terms of this policy;

   b.   An **Employment Practices Claim** brought by an **Insured Person**;

   c.   Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

   d.   Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least three (3) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.d.;

   e.   Any **Claim** brought by an **Employee** of the Insured Organization who is not or was not a director or officer of the **Insured Organization** and where such **Claim** is brought by such **Employee** only in their capacity as a stockholder and independently of assistance from **Insureds** expressly as noted in section 9., above; or

   f.   Any instigation of or involvement in any **Claim** by, or solicitation, assistance, active participation or intervention of any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law;

   g.   Any **Claim** brought by a director, officer, trustee, manager, member of the board of managers or other executive of an **Insured Organization** formed and operating in a country other than the United States of America, Canada or any other common law country.

Provided further, however, that in the event that an **Insured Person** brings a cross-claim or third-party claim, as described in 9. a. above, against another **Insured Person**, then solely with respect to the **Loss** derived from a cross-claim or third-party claim, the **Insurer** shall be liable solely for **Defense Expenses**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046    **Effective:** 7/1/2010

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MODIFIED NOTICE OF CLAIM OR CIRCUMSTANCE – SPECIFIC POSITION TRIGGER

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance, is deleted and replaced by the following:

**C. Notice of Claim or Circumstance**

1.  If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** (via certified mail at the address shown on the Declarations Page) as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than <u>Ninety</u> (<u>90</u>) days after either the expiration date or any earlier cancellation date of this policy.

    A **Claim** shall be deemed to have been made on the date of service upon or receipt of actual notice of such **Claim** by <u>General Counsel and/or Risk Manager</u> of the **Insured Organization**.

2.  If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice (via certified mail at the address shown on the Declarations Page), of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**.  The written notice shall include, at a minimum:

    a.  The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

    b.  The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046     **Effective:** 7/1/2010

RSG 204147 0607

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SUBLIMIT-DEFENSE EXPENSES – WAGE AND HOUR CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, this Policy shall allow up to $100,000 solely for **Defense Expenses** in connection with **Claims** made against any **Insured** for violation of the Fair Labor Standards Act or any similar state or local law or regulation specifically governing the payment of wages or hours worked ("**Wage and Hour Claim**").  This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page, and shall not act to create coverage for any form of relief sought or available in any **Wage and Hour Claim**.

A Retention in the amount of $75,000 shall apply to any **Wage and Hour Claim**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Defense Expenses** in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP638046    **Effective:** 7/1/2010

RSG 204153 0609

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# THIRD PARTY LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

A.  The **Insurer** shall pay for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any **Third Party Discrimination** and/or **Third Party Sexual Harassment**.

B.  SECTION III. – DEFINITIONS is amended by adding the following with respect to coverage provided by this endorsement:

    1.  **Third Party** means any person(s) with whom an **Insured** interacts.

    2.  **Third Party Discrimination** means any discrimination by an **Insured** in his or her capacity as such against a **Third Party** based on such **Third Party's** race, color, creed, religion, age, gender, national origin, sexual orientation or preference, disability, pregnancy or other protected status that is protected pursuant to any applicable federal, state or local statute or ordinance.

    3.  **Third Party Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made by an **Insured** to a **Third Party**.

C.  SECTION III. – DEFINITIONS, F. **Employment Practices Wrongful Act** is amended to include any actual or alleged **Third Party Discrimination** or **Third Party Sexual Harassment** as defined in paragraphs B.2. and B.3. above.

D.  A Retention in the amount of $ 75,000 shall apply to **Loss** arising from any **Third Party Discrimination** or **Third Party Sexual Harassment**.  The Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** which is in excess of the above stated Retention amount.

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

# *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO FLORIDA POLICYHOLDERS**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**QUESTIONS ABOUT YOUR INSURANCE? -** If you have any inquiries, need to obtain coverage information or need assistance in resolving complaints, please do not hesitate to contact your insurance company or agent.

FOR **COMMERCIAL INSURANCE** CONTACT:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

Call Collect          (404) 231-2366

RSG 99003 0803



# *www.RSUIextra.com*

## Online Human Resource Loss Prevention Services for Directors and Officers Liability Policyholders

## Key Features

- Best Practice Help Line for call-in assistance
- Checklist database for lowering risk
- Links to important federal and state government sites
- Online library with up-to-date articles on productivity, leadership and loss prevention
- Sample Human Resource policies and forms
- Online reporting function allows the Site Administrator to monitor usage
- Online training modules designed for managers and supervisors with the ability to adapt programs to meet their own needs.  Best Practice training modules include:
  - Preventing Sexual Harassment
  - Preventing Discrimination
  - Preventing Wrongful Termination
  - Promoting Ethical Behavior

## How to get started

1. Designate a person to serve as the Site Administrator for your organization.
2. Go to *www.RSUIextra.com*.
3. Click the *Register* link on the left-hand side of the home page.
4. Enter your RSUI policy number as the Passcode/Organization Code (i.e. NHP123456).
5. Complete the Registration Information and click *Submit.*
6. You are now registered as the Site Administrator.

## Who is a Site Administrator?

A Site Administrator is often a person who works with personnel or legal matters and is the person who will oversee the use of *www.RSUIextra.com*.  A Site Administrator will have the ability to recruit and add other users as well as make training decisions.

## Questions?

Please click *CONTACT US* at *www.RSUIextra.com* on the upper right hand side of the home page.  You will be directed to The McCalmon Group for assistance.

*This site is administered by The McCalmon Group.*

RSG 204154 0509



RSUI Indemnity Company
**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA  30326-1160

# DIRECTORS AND OFFICERS LIABILITY POLICY PRIVATE COMPANY

**NOTICE:**  THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD**, OR WITHIN SIXTY (60) DAYS THEREAFTER.   THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF **DEFENSE EXPENSES**.

**PLEASE READ YOUR POLICY CAREFULLY**

## CLAIM NOTICE

**Mail notices to:**    **RSUI Group, Inc.**
**945 East Paces Ferry Rd.**
**Suite 1800**
**Atlanta, GA 30326-1160**

**Fax notices to:**    **(404) 260-3997**
**Attn: Claims Department**

**E-mail notices to:**    **reportclaims@rsui.com**

*A member of Alleghany Insurance Holdings LLC*

# TABLE OF CONTENTS
## DIRECTORS AND OFFICERS LIABILITY POLICY
## PRIVATE COMPANY
## PLEASE READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**

Item 1. – Named Insured and Address
Item 2. – Policy Period
Item 3. – Limit of Liability
Item 4. – Retention
Item 5. – Premium
Item 6. – Endorsements Attached

**SECTIONS**

I.   INSURING AGREEMENTS ........................................................................................... 3

II.  COVERAGE EXTENSIONS ........................................................................................ 3
     Marital Estate ....................................................................................................... 3
     Outside Board Extension ..................................................................................... 3
     Estates and Legal Representatives ..................................................................... 3

III. DEFINITIONS........................................................................................................... 3

IV.  EXCLUSIONS .......................................................................................................... 6

V.   CONDITIONS........................................................................................................... 8
     Duty to Defend ..................................................................................................... 8
     Limit of Liability; Retention; Payment of Loss ..................................................... 8
     Notice of Claim or Circumstance......................................................................... 9
     Cooperation ......................................................................................................... 9
     Other Insurance and Indemnification ................................................................... 9
     Allocation ............................................................................................................. 9
     Cancellation; Renewal Provision.......................................................................... 9
     Discovery Period ................................................................................................ 10
     Merger, Consolidation or Acquisition ................................................................. 10
     Bankruptcy and Priority of Payments ................................................................. 11
     Representations .................................................................................................. 11
     No Action Against Insurer ................................................................................... 11
     Subrogation ........................................................................................................ 12
     Authorization and Notices .................................................................................. 12
     Changes .............................................................................................................. 12
     Assignment......................................................................................................... 12
     Acceptance......................................................................................................... 12
     Headings ............................................................................................................. 12
     Governing Law Clause ....................................................................................... 12
     Territory .............................................................................................................. 12
     Nuclear Exclusion .............................................................................................. 13

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. - DEFINITIONS.

In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

**A.** With the **Insured Person** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Persons**.

**B.** With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.** With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

## SECTION II. - COVERAGE EXTENSIONS

**A.  Marital Estate**

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized domestic partner of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or domestic partner.

**B.  Outside Board Extension**

This policy shall cover **Loss** arising from an **Insured Person** having served, at the direction of and with the consent of the **Insured Organization**, as Director, Officer, or Trustee for any eleemosynary corporation or other not for profit organization where such **Insured Person** is entitled to indemnification by the **Insured Organization**.

This COVERAGE EXTENSION shall be excess of any indemnification and/or insurance that may be permitted or provided by such eleemosynary corporation or organization, regardless of payment made by or on behalf of such eleemosynary corporation or organization, including but not limited to any other Director and Officer Liability Insurance or similar insurance provided for, to, or by any such eleemosynary corporation or organization.

**C.  Estates and Legal Representatives**

This policy shall cover **Loss** arising from any **Claim** made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased, or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, for the **Wrongful Act** of such **Insured Person**.

## SECTION III. - DEFINITIONS

**A.  Application** means the application attached to and forming a part of this policy, or any prior policy, including any materials submitted or requested in connection with such application, all of which are deemed a part of this policy.

**B.  Claim**, either in the singular or the plural, means:

**1.**  A written demand for monetary or non-monetary relief;

**2.**  A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

     **a.**  Receipt or service of a complaint or similar pleading;

     **b.**  Return of an indictment (in case of a criminal proceeding); or

     **c.**  Receipt of a notice of charges;

  **3.**  An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

The DEFINITION of **Claim** shall include an **Employment Practices Claim**; provided, the DEFINITION of **Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

**C.** **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses** however, shall not include:

  **1.**  Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

  **2.**  Any obligation to apply for or furnish any appellate or similar bond.

**D.** **Employee** means any past, present or future employee of the **Insured Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee of the **Insured Organization**.  An individual who is leased or contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

**E.** **Employment Practices Claim** means any **Claim** alleging an **Employment Practices Wrongful Act**.

**F.** **Employment Practices Wrongful Act** means any actual or alleged:

  **1.**  Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;

  **2.**  Employment related harassment (including but not limited to sexual harassment);

  **3.**  Employment related discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

  **4.**  Employment-related retaliation;

  **5.**  Employment-related misrepresentation to an **Employee** or applicant for employment with the **Insured Organization**;

  **6.**  Employment-related libel, slander, humiliation, defamation and/or invasion of privacy;

  **7.**  Wrongful failure to employ or promote;

  **8.**  Wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of defamatory statements in connection with an **Employee** reference;

  **9.**  Employment related wrongful discipline;

  **10.**  Failure to grant tenure or practice privileges;

  **11.**  Failure to provide or enforce adequate or consistent organization policies or procedures relating to employment performance;

  **12.**  Violations of the following federal laws (as amended) including all regulations promulgated thereunder:

     **a.**  Family and Medical Leave Act of 1993;

     **b.**  Americans with Disabilities Act of 1992 (ADA);

     **c.**  Civil Rights Act of 1991;

     **d.**  Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or

   e.  Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

**13.** Violation of an **Insured Person's** civil rights relating to any of the above; or

**14.** Negligent hiring, retention, training or supervision, infliction of emotional distress, or violation of an individual's civil rights, when alleged in conjunction with any of the foregoing items 1. through 13.,

whether such **Employment Practices Wrongful Act** as described in 1-14 above is committed directly, indirectly, intentionally or unintentionally, but only if the **Employment Practices Wrongful Act** actually or allegedly pertains to acts committed by an **Insured** and are alleged against an **Insured** by an **Insured Person** or applicant for employment with the **Insured Organization**.

**G.** **Insured** means any **Insured Organization** and/or any **Insured Person**.

**H.** **Insured Organization** means:

  **1.** The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

  **2.** Subject to SECTION V. - CONDITIONS, I. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall mean any **Subsidiary** created or acquired after the inception date of this policy; or

  **3.** In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

**I.** **Insured Person** means

  **1.** Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

  **2.** In the event the **Insured Organization** or a **Subsidiary** thereof operates outside the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

**J.** **Insurer** means the Company providing this insurance as shown on the Declarations Page.

**K.** **Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

  **1.** Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

  **2.** Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

  **3.** Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

  **4.** The cost of creating or reinstating employment;

  **5.** Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

  **6.** Civil or criminal fines or penalties;

  **7.** Taxes, whether owed to or by any **Insured**;

  **8.** Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any actual or alleged liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**;

  **9.** Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

**L.** **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or to any earlier policy cancellation or termination date.

**M.** **Subsidiary** means any entity of which the **Insured Organization**, either directly or indirectly, or through one or more of its **Subsidiaries**:

    **1.** Owns more than fifty percent (50%) of the voting stock and/or outstanding securities; or

    **2.** Has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers.

    A **Subsidiary** ceases to be a **Subsidiary** when the **Insured Organization** no longer owns more than fifty percent (50%) of the voting stock and/or outstanding securities, or no longer has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers, or the means by which the **Insured Organization** is legally enabled to exercise fifty percent (50%) ownership or control is formally extinguished.

**N.** **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual or alleged **Employment Practices Wrongful Act**, by:

    **1.** An **Insured Person** acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

    **2.** The **Insured Organization**.

**SECTION IV. - EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

**1.** Based upon, arising out of or attributable to any remuneration received by an **Insured**, or the granting of any remuneration to any **Insured**, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** received remuneration to which such **Insured** was not legally entitled;

**2.** Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** gained profit or advantage to which such **Insured** was not legally entitled;

**3.** Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

The **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of EXCLUSIONS 1. through 3. above.

**4.** For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically injured; provided, this EXCLUSION shall not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**;

**5.** For actual or alleged libel, slander or defamation in any form; provided, this EXCLUSION shall not apply to allegations of libel, slander or defamation in any form made solely in connection with an **Employment Practices Claim**;

**6.** For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

7. Alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

8. For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**; provided, this EXCLUSION shall not apply to any **Claim** under SECTION I. - INSURING AGREEMENT A. of this policy.

    Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

9. Brought by or on behalf of any **Insured**, or which is brought by any security holder of the **Insured Organization**, whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**. Provided, however, this EXCLUSION shall not apply to:

    a. Any **Claim** brought by an **Insured Person**, where such **Claim** is in the form of a cross-claim or a third-party claim for contribution or indemnity, which is part of and results directly from a **Claim** that is not otherwise excluded by the terms of this policy;

    b. An **Employment Practices Claim** brought by an **Insured Person**;

    c. Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

    d. Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least five (5) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.d;

    e. Any **Claim** brought by an **Employee** of the **Insured Organization** who is not or was not a director or officer of the **Insured Organization** and where such **Claim** is brought by such **Employee** only in their capacity as a stockholder and independently of assistance from **Insureds** expressly as noted in section 9., above; or

    f. Any instigation of or involvement in any **Claim**, or solicitation, assistance, active participation or intervention by any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law.

    Provided further, however, that in the event that an **Insured Person** brings a cross-claim or third-party claim, as described in 9. a. above, against another **Insured Person**, then solely with respect to the **Loss** derived from a cross-claim or third-party claim, the **Insurer** shall be liable solely for **Defense Expenses**;

10. Alleging, arising out of, based upon or attributable to, in whole or part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending at the inception date of this policy, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

11. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

12. Alleging, arising out of, based upon or attributable to any initial public offering of securities by the **Insured Organization** or alleging the purchase or sale of such securities subsequent to such offering;

13. With respect to **INSURING AGREEMENT C.** of this policy, only:

    **a.** For actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, secret or any other intellectual property rights;

    **b.** For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships; or

    **c.** Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement; provided, this EXCLUSION shall not apply to **Defense Expenses** in connection with an **Employment Practices Claim**.

## SECTION V. - CONDITIONS

### A. Duty to Defend

It shall be the right and duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of it choosing.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations;

    **1.** The **Insured** will thereafter be solely responsible for negotiating and defending such **Claim** at their own expense; and

    **2.** Subject to the **Insurer's** aggregate Limit of Liability stated in Item 3. of the Declarations Page, the **Insurer's** liability with respect of any such **Claim** will not exceed the amount for which such **Claim** could have been settled by the **Insurer**, including **Defense Expenses** incurred up to and until the time that the **Insured** refuses to consent to settlement.

### B. Limit of Liability; Retention; Payment of Loss

    **1.** The Limit of Liability stated in Item 3. of the Declarations Page is the maximum aggregate limit that the **Insurer** will pay for all **Loss** under all INSURING AGREEMENTS combined, arising out of any and all **Claims** first made against the **Insured** during the **Policy Period** and the Discovery Period (if purchased) and reported in accordance with the terms and conditions of this policy.

    The **Insurer** will have no obligation to pay **Loss** or to defend or continue to defend any **Claim** after the aggregate Limit of Liability, stated in Item 3. of the Declarations Page, has been exhausted by payment of **Loss**.  **Defense Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Defense Expenses** by the **Insurer** will reduce the Limit of Liability.

    **2.** As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 4. of the Declarations Page.  The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

    **3.** All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 4. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

    **4.** In the event that a **Claim** implicates more than one of the Retention amounts stated in Item 4. of the Declarations Page, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a **Claim**.

5. The Retention amount applicable to SECTION I. - INSURING AGREEMENT A. of this policy, as stated in Item 4. of the Declarations Page, shall not be applicable under any circumstances where indemnification by the **Insured Organization** is permitted or required, regardless of whether the **Insured Organization** has agreed to indemnify an **Insured Person**, provided it shall apply when indemnification cannot be made by the **Insured Organization** by reason of the **Insured Organization's** financial insolvency.

6. The **Insurer's** duty to defend the **Insured** and pay **Defense Expenses** ends upon exhaustion of the Limit of Liability, which includes paying or tendering the Limit of Liability into court.

7. Except for payment of **Defense Expenses**, the **Insurer** shall pay for **Loss** only upon final disposition of any **Claim**.

C. **Notice of Claim or Circumstance**

1. If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the expiration date or any earlier cancellation date of this policy.

2. If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

   a. The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

   b. The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

D. **Cooperation**

In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.

E. **Other Insurance and Indemnification**

Insurance provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy.   This policy shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

F. **Allocation**

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**.   If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary.   Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim**.

**G.   Cancellation; Renewal Provision**

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at the address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of non-renewal, stating the reasons for non-renewal, at least sixty (60) days prior to the expiration date of this policy.

Any notice of non-renewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**H.   Discovery Period**

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**.  The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or nonrenewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.

The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

**I.   Merger, Consolidation or Acquisition**

1.   If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2.   If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition.  After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization**, unless:

a.   Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization**, as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

    b.   The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

    c.   The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

    d.   The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

3.   If during the **Policy Period**:

    a.   The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    b.   Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

        (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction"),

then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction. This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

**J.  Bankruptcy and Priority of Payments**

The bankruptcy or insolvency of the **Insured Organization** or any **Subsidiary** shall not relieve the **Insurer** of any of its obligations hereunder. The coverage provided by this policy, however, is intended primarily to protect and benefit the **Insured Persons**.

With respect to the payment of the policy proceeds, it is agreed that covered **Loss** due under this policy shall be paid by the **Insurer** in the following order of priority:

1.   First pay such **Loss** for which coverage is provided under INSURING AGREEMENT A. of this policy;

2.   With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT B. of this policy; and

3.   With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT C. of this policy.

The **Insured Organization** or its representatives and the **Insurer** shall use their best efforts to agree upon the priority of payment of all **Loss** under this policy. If no agreement is reached regarding the priority of payments, then the **Insurer** and **Insured Organization** will submit the issue of such priority, and only that issue, to binding arbitration.

**K.  Representations**

The **Insured** represents that as of the inception date of this policy, the information, particulars, documents, representations and statements contained in, attached or referred to in the **Application** are: complete, true and correct; are the basis of this policy; are deemed incorporated into and constituting part of this policy; and are material to the acceptance of the risk assumed by the **Insurer**. This policy is issued in reliance upon the truthfulness and completeness of such information, particulars, documents, representations and statements. Except for knowledge or information possessed by, or facts or circumstances pertaining to the person or persons who signed the **Application**, no statement or representation in the **Application** or knowledge or information possessed by an **Insured Person** will be imputed to any other **Insured Person** for the purpose of determining the existence or availability of coverage under this policy.

**L.  No Action Against Insurer**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

**M. Subrogation**

In the event the **Insurer** makes any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**, who shall execute all papers and take all necessary actions to secure such rights, including the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of an **Insured**.

**N. Authorization and Notices**

The **Insured Persons** agrees that the **Insured Organization** acts on their behalf with respect to giving and receiving all notices and return of premium from the **Insurer**.

**O. Changes**

Notice to any agent or knowledge possessed by any agent or representations by persons acting on behalf of the **Insurer** do not effect a waiver or change in any part of this policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this policy. The terms, conditions and limitations of this policy can only be waived or changed by written endorsement.

**P. Assignment**

Assignment of interest under this policy does not bind the **Insurer** without its prior written consent.

**Q. Acceptance**

The **Insureds** agree that this policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** relating to this insurance policy.

**R. Headings**

The description in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**S. Governing Law Clause**

This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

**T. Territory**

This policy shall apply to **Claims** made against any **Insured** anywhere in the world.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

_Kathy Wu_

Secretary

_David E. Leonard_

President

**THIS EXCLUSION CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NUCLEAR ENERGY LIABILITY EXCLUSION**

1. **Nuclear Exclusion**

   It is agreed that this policy does not apply:

   a. Under any Liability coverage, to injury, disease, death or destruction:

      (1) With respect to which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its Limit of Liability; or

      (2) Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

         (a) Any person or organization is required to maintain financial protection pursuant to the atomic Energy Act of 1954, or any law amendatory thereof; or

         (b) The **Insured** is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of a **nuclear facility** by any person or organization.

   c. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of **nuclear material**, if:

      (1) The **nuclear material**:

         (a) Is at any **nuclear facility** owned by, or operated by or on behalf of an **Insured**; or

         (b) Has been discharged or dispersed there from;

      (2) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

      (3) The injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** or services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion applies only to injury to or destruction of property at such **nuclear facility**.

   d. As used in this Exclusion:

      (1) **Hazardous properties** include radioactive, toxic or explosive properties;

      (2) **Nuclear material** means **source material**, special material or **byproduct material**;

      (3) **Source material**, special **nuclear material** and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

      (4) **Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

      (5) **Waste** means any **waste** material:

         (a) Containing **byproduct material**; and

         (b) Resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph **(a)** or **(b)** thereof;

      (6) **Nuclear Facility** means:

         (a) Any **nuclear reactor**;

         (b) Any equipment or device designed or used for;

            i.   Separating the isotopes of uranium or plutonium;

      **ii.** Processing or utilizing **spent fuel**; or

      **iii.** Handling, processing or packaging **waste**;

**(c)** Any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**e.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or destruction of property, the word *injury* or *destruction* includes all forms of radioactive contamination of property.